O

# United States District Court
# Central District of California

| | |
|---|---|
| CHANEL, INC., <br><br> Plaintiff, <br><br> v. <br><br> PUKA CREATIONS, LLC d/b/a PUKA CREATIONS d/b/a PUKACREATIONS.COM; DOES 1–10, inclusive, <br><br> Defendants. | Case № 2:14-cv-08405-ODW(AJWx) <br> ***<u>UNDER SEAL</u>*** <br> ORDER GRANTING PLAINTIFF'S EMERGENCY EX PARTE APPLICATION FOR <br> (1) TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER; <br> (2) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; AND <br> (3) SUBSTITUTE CUSTODIAN ORDER |

## I.  INTRODUCTION

Before the Court is Plaintiff Chanel, Inc.'s Emergency Ex Parte Application for (1) Temporary Restraining Order and Seizure Order; (2) Order to Show Cause Why a Preliminary Injunction Should Not Issue; and (3) Substitute Custodian Order (hereinafter "Ex Parte Application" or "Appl."). For the reasons set forth below, the Court **GRANTS** Chanel's Ex Parte Application.

## II.  FACTUAL BACKGROUND

On October 30, 2014, Plaintiff Chanel, Inc. filed the Complaint under seal against Defendant Puka Creations, LLC d/b/a Puka Creations d/b/a pukacreations.com. Chanel brings two claims for (1) federal trademark infringement and counterfeiting and (2) false designation of origin. This Ex Parte Application was filed on the same day. Chanel notified the United States Attorney for the Central District of California of its application for an ex parte seizure order on October 24, 2014. (Gaffigan Decl. ¶ 2, Ex. 1.)

Chanel is incorporated and has a principle place of business in New York. (Hahn Decl. ¶ 2.) Chanel manufactures, promotes, sells, and distributes high-quality goods, including costume jewelry. (*Id.* ¶ 5.) Chanel is the sole owner of all rights to U.S. Trademark Registration No. 1,501,898 ("the Chanel Mark"). (*Id.* ¶ 4, Ex. 1.)

The Chanel Mark is registered in International Class 14, and is used in connection with the manufacture and distribution of, among other things, costume jewelry. (*Id.*) Chanel sells costume jewelry bearing the Chanel Mark at its boutiques throughout the United States and at other retail stores as well as over the internet. (*Id.* ¶ 6.) According to Chanel, it has spent tens of millions of dollars advertising and promoting its goods and associated trademarks. (*Id.*) In the last five years, Chanel's sales of costume jewelry and other goods have totaled in the hundreds of millions of dollars. (*Id.*)

In September 2014, Chanel retained Investigative Consultants, a licensed private investigative firm, to look into Puka Creations' sales of allegedly counterfeit costume jewelry. (*Id.* ¶ 9.) Investigative Consultants is a licensed private investigation firm. (*Id.*) On September 10, 2014, Investigator Lisa Moreno traveled to Puka Creations' business location at 16840 South Main Street, Gardena, California 90248. (Moreno Decl. ¶ 3.) Upon entering the location, Moreno observed an office area with multiple desks and a door leading to a warehouse. (*Id.* ¶ 4.) Moreno was greeted by a male employee who identified himself as "Apo." (*Id.* ¶ 5.) Apo

confirmed that the business was "Puka Creations" and that they had costume jewelry bearing the Chanel Mark in stock and available for purchase. (*Id.*) Apo escorted Moreno to the warehouse area where another employee identified as "Denise" showed Moreno costume jewelry pieces bearing the Chanel Mark. (*Id.* ¶¶ 5–6.) Moreno inquired about purchasing large quantities of costume jewelry with the Chanel Mark and was informed that she could order as many items as she needed. (*Id.*) During the visit, Moreno was given a sample piece bearing the Chanel Mark. (*Id.*)

Moreno returned to the Puka Creations business location on two subsequent occasions. (*Id.* ¶¶ 7–10.) During each of Moreno's visits she observed hundreds of costume-jewelry pieces bearing the Chanel Mark. (*Id.* ¶¶ 6–7, 10.) On her last visit, Moreno purchased ten items bearing the Chanel Mark as well as three generic costume-jewelry pieces for a total purchase price of $5.00. (*Id.* ¶ 11.)

The items purchased from Puka Creations were sent to Chanel in New York. (*Id.* ¶ 12.) Adrienne Hahn, a Chanel employee trained in identifying counterfeit Chanel products, determined that the items purchased from Puka Creations were not genuine based on the workmanship, materials, and markings. (Hahn Decl. ¶¶ 3, 11, 13, 15, Exs. 5, 7, 9.) In addition, the Chanel Mark has never been assigned or licensed to Puka Creations. (*Id.* ¶ 8.)

### III.  LEGAL STANDARD

**A.  Rule 65(b)—Temporary Restraining Orders**

A temporary restraining order ("TRO") may issue only if the movant provides specific facts in an affidavit or verified complaint that clearly show "immediate and irreparable injury" will result absent an order. Fed. R. Civ. P. 65(b). The standard applicable to the issuance of a preliminary injunction applies to TROs as well. *Frontline Med. Assocs., Inc. v. Coventry Healthcare Wroker's Comp., Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009). The movant must establish that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is

in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979 (9th Cir. 2011). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 24.

**B.      Ex Parte Seizure Order**

In an action arising out of the use of counterfeit trademarks, a "court may, upon ex parte action, grant an order . . . providing for the seizure of goods and counterfeit marks . . . and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved . . . ." 15 U.S.C. § 1116(d)(1)(A). An applicant seeking an ex parte seizure order must provide reasonable notice to the United States Attorney in the district and post a bond in support of any seizure order that issues. *Id.* §§ 1116(d)(2), 4(A).

A court may issue a seizure order only if,

> it clearly appears from specific facts that—(i) an order other than an ex parte seizure order is not adequate to achieve the purposes of [15 U.S.C. § 1114]; (ii) the applicant has not publicized the requested seizure; (iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services; (iv) an immediate and irreparable injury will occur if such seizure is not ordered; (v) the matter to be seized will be located at the place identified in the application; (vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered . . . ; and (vii) the person against who seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

*Id.* § 1116(d)(4)(B). Many of the prerequisites to the issuance of a seizure order are similar to those for a TRO. A failure to satisfy any of the seven elements prohibits immediate seizure since an ex parte seizure order is "an extraordinary mechanism for pre-notice seizure of allegedly infringing goods." *In re Lorillard Tobacco Co.*, 370 F.3d 982, 989 (9th Cir. 2004).

## IV. DISCUSSION

Chanel's Ex Parte Application seeks to enjoin Puka Creations from selling or making use of the Chanel Mark and seize the allegedly counterfeit goods and related records during the pendency of the litigation. The Court first addresses Chanel's request for ex parte relief, and then turns to the merits of the requested TRO and seizure order.

### A. Rule 65(b)'s Notice Requirement

"[C]ourts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). An ex parte TRO is generally only appropriate where (1) notice would be impossible because the party is not known or cannot be located, or (2) notice would render further prosecution fruitless. *Id.* In a trademark-infringement case, an ex parte TRO may be appropriate where "an alleged infringer is likely to dispose of the infringing goods" before a hearing can be held. *Id.* This exception to the notice requirement under Rule 65(b) loosely corresponds to the requirement for ex parte seizure under § 1116(d) that the defendant "would destroy, move, hide, or otherwise make [the goods] inaccessible to the court" if notice was given. *See Lorillard Tobacco Co. v. Bisan Food Corp.*, 377 F.3d 313, 320 (3d Cir. 2004).

Here, the Court finds that Chanel has sufficiently demonstrated why the notice requirement should be excused. In the Ex Parte Application, Chanel asserts that a TRO should issue without notice because Puka Creations can easily unload or hide the counterfeit costume jewelry and destroy related records. (Appl. 5.) Chanel also avers that Puka Creations is fully aware that it is copying the Chanel Mark and that

trademark counterfeiting is a crime. (*Id.*) As Chanel points out, the goods are relatively easy to conceal and move; thus, if Puka Creations does in fact conceal the goods or related records, Chanel would likely have trouble obtaining the goods to move forward with its claims. (*Id.* at 8.)

Although Chanel does not offer evidence that Puka Creations has a history of destroying evidence or violating court orders, there is evidence that similarly situated California defendants have ignored court orders to preserve evidence upon denial of a request for an ex parte TRO. (*Id.* at 9–12; Gaffigan Decl. ¶¶ 5–9, Ex. 2 (*Rovio Entm't, Ltd. v. Royal Plush Toys, Inc.*, No. C 12-5543-SBA (N.D. Cal. case filed Oct. 29, 2012)), Ex. 3 (*Chanel, Inc. v. Kwang Lee*, No. 5:10-cv-4467-JF (N.D. Cal. TRO denied Oct. 6, 2010)).) The Court finds this evidence sufficient to satisfy *Reno Air*'s standard for issuing an ex parte TRO.

**B.     Temporary Restraining Order**

As discussed above, to obtain a TRO against Puka Creations, Chanel must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of equities weighs in its favor, and (4) a TRO is in the public interest. *Winter*, 555 U.S. at 20. The Court finds that Chanel has met these requirements.

**1.     Likelihood of Success on the Merits**

To succeed on a claim of trademark infringement, Chanel must demonstrate that (1) it owns a valid, protectable mark, and (2) Puka Creations' use of the mark is likely to cause consumer confusion. *Brookfield Comm., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046–47 (9th Cir. 1999).

Here, Chanel has demonstrated that it owns the Chanel Mark. (Hahn Decl. ¶ 4, Ex. 1.) The Chanel Mark is a federally registered trademark and, therefore, presumptively valid. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005). Moreover, Puka Creations is not authorized to use the Chanel Mark. (Hahn Decl. ¶ 8.) Thus, the only issue is whether Puka Creations' use of the mark is likely to cause consumer confusion.

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), lays out an eight-factor test that courts apply when assessing likelihood of confusion. The factors are (1) strength of plaintiff's mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care consumers are likely to exercise; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.* No one factor is dispositive, nor is every factor applied in every case. *One Indus, LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1162 (9th Cir. 2009).

In analyzing the first *Sleekcraft* factor, courts assess both the conceptual and commercial strength of the mark. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080–81 (9th Cir. 2005). Trademarks are categorized along a spectrum. Generic or descriptive marks are weaker, whereas arbitrary or fanciful marks have more conceptual strength. *Id.* A mark's commercial success can serve to bolster the strength of a mark that may be conceptually weaker. *Id.* at 1081. Chanel argues that the Chanel Mark is strong and has acquired second meaning. (Appl. 19.) Chanel has spent time, labor, skill, and money to develop, advertise, and promote the Chanel Mark. (Hahn Decl. ¶¶ 4, 6–7.) The Chanel Mark enjoys widespread recognition and products bearing the Chanel Mark are top sellers in the luxury-products market. (*Id.*) The Court finds this evidence sufficient and the first *Sleekcraft* factor weighs in favor of a likelihood of confusion.

The proximity of goods—the second *Sleekcraft* factor—also weighs in Chanel's favor. This factor considers whether the goods are "(1) complementary, (2) sold to the same class of purchasers, and (3) similar in use and function." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011). Although the allegedly counterfeit jewelry sold by Puka Creations is not of the same quality as Chanel's products, the goods are complementary and similar in use and function. (*See* Hahn Decl. ¶ 15.) The counterfeit goods are unlikely to be sold to the same class of purchasers, but the counterfeit costume jewelry could appear substantially similar to

the average consumer. This poses a danger that "the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." *Network Automation*, 638 F.3d at 1150.

The similarity of the marks—the third *Sleekcraft* factor—easily weighs in Chanel's favor. The mark used by Puka Creations is virtually identical to the Chanel Mark. (*Compare* Hahn Decl. Ex. 1 *with* Moreno Decl. Exs. 5, 7, 9.) Moreover, while Chanel offers no evidence of actual confusion—the fourth *Sleekcraft* factor—evidence of actual confusion is not required, particularly in the preliminary injunctions stage of the proceedings. *Network Automation*, 638 F.3d at 1151.

The next two *Sleekcraft* factors—marketing channels used and degree of care used in selecting the goods—tip slightly in Chanel's favor as well. Both Chanel and Puka Creations sell their goods at brick and mortar stores as well as online. (Appl. 21.) Moreover, Puka Creations' goods are relatively inexpensive, which means consumers are less likely to spend time examining the goods before purchase. (Appl. 22; Moreno Decl. ¶ 11.) Moreover, an average consumer down the distribution line may be unable to detect the counterfeit nature of the goods. (*See* Appl. 22.)

The seventh *Sleekcraft* factor—Puka Creations' intent in selecting the mark—also favors Chanel and a finding of likelihood of confusion. "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354. Here, as discussed above, the Chanel Mark is well known and Puka Creations' mark is virtually identical. Accordingly, based on the evidence at this stage of the litigation, the Court finds that Puka Creations knowingly adopted the mark. Therefore, this factor also favors Chanel.

Finally, the Court finds that Chanel and Puka Creations can be considered direct competitors since they both sell costume jewelry. Thus, the final likelihood-of-confusion factor need not be considered. *See Brookfield*, 174 F.3d at 1060 (holding that this factor is relatively unimportant where companies are in direct competition).

On balance, the Court finds that Chanel has established a likelihood of consumer confusion based on the eight *Sleekcraft* factors. Therefore, the Court finds that Chanel has established a likelihood of success on the merits of its trademark-infringement claim.

### 2. Likelihood of Irreparable Harm

Chanel must demonstrate that it is likely to suffer irreparable injury in the absence of a TRO. *See Winter*, 555 U.S. at 22. "Evidence of a loss of control over business reputation and damage to goodwill" may be sufficient to show irreparable harm. *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).

Here, Channel offers evidence that the Chanel Mark has "acquired fame in the consumer market for a wide variety of goods, including costume jewelry." (Hahn Decl. ¶ 7.) Chanel has also spent tens of millions of dollars to advertise and promote its goods bearing the Chanel Mark and other Chanel trademarks. (*Id.* ¶ 6.) Further, the Chanel Mark is "vital" to Chanel's business and "represents virtually the entire value of Chanel's overall business and associated image." (*Id.* ¶ 8.) While damages could be an adequate remedy for any monetary loss caused by Puka Creations' unauthorized use of the Chanel Mark, the risk of harm to Chanel's goodwill and reputation satisfies the requirement of a likelihood of irreparable harm if a TRO does not issue. *See Herb Reed*, 736 F.3d at 1250.

### 3. Balance of Hardships

Chanel must also show that the balance of hardships weighs in favor of granting a TRO. "[W]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 924 F. Supp. 1559, 1574 (S.D. Cal. 1996) *aff'd*, 109 F.3d 1394 (9th Cir. 1997).

Here, the only plausible hardship to Puka Creations if the Court issues the requested TRO is a loss of profits. Since the Court finds a likelihood of success on

the merits of Chanel's trademark-infringement claim, this hardship does not weigh strongly in Puka Creations' favor. On the other hand, Chanel has invested substantial time and money in developing goodwill associated with the Chanel Mark. (Hahn Decl. ¶¶ 6–8.) If Puka Creations continues to sell the counterfeit costume jewelry, Chanel will continue to suffer injury to its goodwill and reputation. The Court finds that the balance of hardships tips in favor of granting the TRO.

### 4. Public Interest

The Court also finds that the public interest favors granting the TRO. In trademark cases, courts generally recognize that the public has a "right not to be deceived or confused." *Morrocanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1281 (C.D. Cal. 2008) (internal citations omitted). Here, as already discussed, Chanel has spent considerable time and money to build up goodwill with consumers. Moreover, Chanel has demonstrated a likelihood of success on the merits by showing that consumers are likely to be confused by the goods sold by Puka Creations.

For the reasons discussed above, the Court finds that Chanel has established the prerequisites for issuance of a TRO. The Court therefore **GRANTS** Chanel's Ex Parte Application for a TRO.

## C. Seizure Order

The Court finds that Chanel has also satisfied the seven requirements for issuance of an ex parte seizure order. The Court refers to and incorporates its analysis with respect to the TRO here. The Court thus finds that Chanel is likely to show that Puka Creations used a counterfeit mark in connection with sale of goods. Chanel has also demonstrated that it is likely to suffer immediate and irreparable injury to its reputation and goodwill and the balance of hardships weigh in its favor.

The remaining requirements for a seizure order under 15 U.S.C. § 1116(d)(4)(B) are also met. Chanel has established that an ex parte seizure order is the only adequate remedy to achieve the purposes of 15 U.S.C. § 1114. The evidence that similarly situated defendants in analogous trademark-infringement cases have

disposed of or concealed counterfeit goods and refused to comply with court orders to preserve evidence suggests that, absent an ex parte seizure order, Puka Creations may well destroy or conceal the counterfeit costume jewelry. (*See Appl.* at 9–12; Gaffigan Decl. ¶¶ 5–9, Ex. 2 (*Rovio Entm't, Ltd. v. Royal Plush Toys, Inc.*, No. C 12-5543-SBA (N.D. Cal. case filed Oct. 29, 2012)), Ex. 3 (*Chanel, Inc. v. Kwang Lee*, No. 5:10-cv-4467-JF (N.D. Cal. TRO denied Oct. 6, 2010)).) This also suggests that persons "acting in concert with" Puka Creations would also "destroy, move, hide," or otherwise make the items bearing the counterfeit mark inaccessible to the court if Chanel were to provide notice. *See* 15 U.S.C. § 1116(d)(4)(B)(vii). Moreover, neither Chanel nor its counsel has publicized the requested seizure. (Hahn Decl. ¶ 18; Moreno Decl. ¶ 13; Gaffigan Decl. ¶ 10.) Moreno also personally observed and purchased costume jewelry bearing the Chanel Mark at Puka Creations' business location at 16840 South Main Street, Gardena, California 90248, within the last month, suggesting that the items to be seized will be at this location. (Moreno Decl. ¶¶ 3, 6–7, 9–11.)

Overall, the Court finds that an ex parte seizure order under 15 U.S.C. § 1116(d) is appropriate and justified.

**D.    Proposed Bond and Substitute Custodian**

Both a TRO and an ex parte seizure order under § 1116(d) require payment of a bond. Fed. R. Civ. P. 65(c); 15 U.S.C. § 1116(d)(4)(A). Chanel requests that the Court set a bond in the amount of $25,000.00. (Appl. 16.) This amount is appropriate in light of the amount and quality of counterfeit goods allegedly in Puka Creations' possession. (*See* Moreno Decl. ¶ 11; Hahn Decl. ¶¶ 11, 13, 15.)

Under 15 U.S.C. § 1116(d)(7), materials seized "shall be taken into the custody of the court." But courts issuing seizure orders pursuant to this authority have appointed a substitute custodian to hold the seized goods in place of the court of the defendant. *See Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1525 (S.D. Cal. 1989) (finding appointment of plaintiff's agent as substitute custodian did

not violate defendant's rights where a protective order limited plaintiff's access to the records). Thus, the Court finds that the appointment of Chanel's counsel, Stephen M. Gaffigan and Veatch Carlson, LLP, as substitute custodians is appropriate.

## V. CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

**A.     Chanel's Ex Parte Application for a TRO** is **GRANTED**. Defendant, its respective officers, directors, employees, agents, subsidiaries, distributors, and all persons active in concert or participation with any of them are temporarily restrained:

1. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products, product packaging, or labeling bearing the Chanel Mark identified in this Order;

2. From communicating, directly or indirectly, with any person or persons (a) from whom Puka Creations purchased or obtained products bearing the Chanel Mark identified in this Order; or (b) to whom Puka Creations sold or offered to sell these products; or (c) whom Puka Creations knows or reasonably believes to possess, control, or have access to any of these products;

3. From otherwise communicating, directly or indirectly, with any person(s) about this action, or Chanel's Application for this Order, except for Puka Creations' attorneys;

4. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of (a) any products or product packaging not manufactured or distributed by Chanel bearing the Chanel Mark, or any confusingly similar marks; or (b) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products or product packaging bearing the Chanel Mark.

5. Knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in sections 1–4 above.

/ / /

1  **B.    Chanel's Ex Parte Application for a Seizure Order** is **GRANTED** and is to
2  be executed as follows:
3      1.    Pursuant to 15 U.S.C. § 1116(d)(9), the United States Marshal or other
4  federal, state, or local law enforcement official (on or off duty) shall carry out the
5  seizure as provided herein, and Puka Creations shall surrender for seizure (1) all
6  counterfeit products and packaging bearing the Chanel Mark, or any other mark
7  indistinguishable from that mark; together with (2) all documents and records of any
8  kind relating to the importation, purchase, acquisition, manufacture, insurance of,
9  advertising, promotion, sale, offering for sale, distribution, and transfer of such
10 products and packaging, including, but not limited to, computer disks, CD ROMs,
11 computer hardware, and other magnetically or electronically stored information; and
12 all manufacturing or packaging equipment, molds, matrices, computers, computer
13 software, and any other means of making the same, including, but not limited to,
14 machinery designed for the purpose of making or packaging counterfeit products sold
15 under the Chanel Mark or any parts of the foregoing.  The law enforcement officers
16 executing this Seizure Order may look for the documents and things to be seized and
17 may appoint any other persons, including Chanel's counsel, investigators, and
18 representatives, to assist in the execution of the Seizure Order.
19     2.    The seizure should be carried out at Puka Creations' business location,
20 16840 South Main Street, Gardena, California 90248, and any appurtenant,
21 contiguous or nearby suites, areas or facilities as may contain items subject to seizure.
22     3.    Any materials seized by the law enforcement officials executing this
23 Seizure Order shall be delivered into the custody of the following temporary
24 custodians appointed by the Court: Chanel's counsel Stephen M. Gaffigan, P.A., 401
25 East Las Olas Blvd., #130-453, Ft. Lauderdale, Florida 33301 and Veatch Carlson,
26 LLP, 700 South Flower Street, 22nd Floor, Los Angeles, Calfiornia 90017-4209.
27 These items will be held in the custodians' temporary custody pending the hearing
28 provided for herein, pursuant to 15 U.S.C. § 1116(d)(10).  However, Chanel shall be

allowed to examine samples of the seized products for authenticity at its facilities in New York and shall return to Puka Creations, or its counsel, all genuine products seized, if any.

    4.    The seizure shall take place **no later than seven (7) days** after issuance of this Seizure Order pursuant 15 U.S.C. § 1116(d)(5)(C).

    5.    The United States Marshal, or any other law enforcement officer, is authorized to use reasonable force necessary to effect the seizure ordered (including breaking open entrances to building and rooms therein) and to inspect the contents of any rooms, warehouses, closets, safes, cabinets, containers, and desks at or within the above-identified location within this Judicial District.

    6.    Chanel shall hold harmless the United States Marshal's Office and other law enforcement agencies and their employees from any and all claims asserted in any court or tribunal, arising from any acts, incidents, or occurrences in connection with the seizure and possession of Puka Creations' property, including any third-party claims.

    7.    Only the items listed in this Order shall be seized and impounded, and due care shall be taken to preserve and keep in good order Puka Creations' property and assets which are not related to the manufacture, packaging, or distribution of the alleged counterfeit products referred to above.

    8.    At the time of seizure, all items shall be appropriately marked for identification and Puka Creations shall be given a receipt and/or inventory list. In addition, the law enforcement officer executing this Seizure Order shall file an inventory list with this Court **within forty-eight (48) hours** after the seizure has been carried out.

**C.**    **Bond Requirement**: Prior to execution of the seizure ordered herein, Chanel shall post a bond in the amount of **$25,000.00** as payment of damages to which Puka Creations may be entitled for a wrongful seizure or wrongful attempted seizure.

**D.    Protective Order**:  Pursuant to 15 U.S.C. § 1116(d)(7), Chanel shall take all reasonable measure to ensure Puka Creations' confidential, private, proprietary, or privileged information contained in any records seized under this Order are not improperly disclosed or used.

**E.    Compliance Report**: Puka Creations shall file with the Court and serve on counsel for Chanel **within five (5) days** after the seizure authorized herein a report in writing and under oath that sets forth in detail the manner and form in which Puka Creations has complied with this Order.

**F.    Hearing**:  The parties to this action shall appear for a hearing on the TRO and Seizure Order on **Monday, November 17, 2014, at 1:30 p.m.**  At that time, Puka Creations is **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue pursuant to Federal Rule of Civil Procedure 65(a).

    1.    Puka Creations shall file any written briefing in response to this Order to Show Cause **no later than Thursday, November 13, 2014, at 5 p.m.**

    2.    Chanel shall file any responsive briefing **no later than Friday, November 14, 2014, at 5 p.m.**

**G.**    Chanel shall serve copies of this Order and the papers in support thereof on Puka Creations or its attorneys at the time of seizure, or within three (3) days after the seizure if there is no party present at the seizure who is authorized to accept service.

**IT IS SO ORDERED.**

November 3, 2014

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**