1                                                                                          **O**
2
3
4
5
6
7
8                     𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱
9                     ℭ𝔢𝔫𝔱𝔯𝔞𝔩 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 ℭ𝔞𝔩𝔦𝔣𝔬𝔯𝔫𝔦𝔞
10

| | |
|---|---|
| 11  CHANEL, INC., | Case No. 2:14-cv-08405-ODW(AJWx) |
| 12              Plaintiff, | |
| 13        v. | **ORDER GRANTING PLAINTIFF'S** |
| 14  PUKA CREATIONS, LLC d/b/a PUKA | **MOTION FOR DEFAULT** |
| 15  CREATIONS d/b/a | **JUDGMENT [24]** |
| 16  PUKACREATIONS.COM; DOES 1–10, | |
| 17  inclusive, | |
| 18              Defendants. | |

## I.    INTRODUCTION

19
20        Before the Court is Plaintiff Chanel, Inc.'s Motion for Default Judgment against
21  Defendant Puka Creations, LLC.  (ECF No. 24.)  For the reasons discussed below, the
22  Court accepts the allegations in Chanel's Complaint (ECF No. 7) as true and
23  **GRANTS** Chanel's Motion for Default Judgment.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

24
25        Chanel manufacturers, promotes, sells, and distributes costume jewelry and
26  other products under U.S. Trademark No. 1,501,898 (the "Chanel Mark").  (Compl.
27  ¶ 2, 7.)  Chanel expended substantial time, money, and other resources developing,
28  / / /

1    advertising, and otherwise promoting the Chanel Mark.  (*Id.* ¶ 11.)  The Chanel Mark
2    is a symbol of Chanel's quality, reputation, and goodwill.  (*Id.* ¶ 10.)

3          Without authorization, Puka Creations promotes, advertises, distributes, and
4    sells products bearing a trademark which is an exact copy of the Chanel Mark.  (*Id.*
5    ¶ 16.)  The counterfeit and infringing products include costume jewelry.  (*Id.*)  Puka
6    Creations had full knowledge of Chanel's ownership in the Chanel Mark, including its
7    exclusive right to use and license such intellectual property, and was never granted
8    any right or authority to use the Chanel Mark for any purpose.  (*Id.* ¶ 15.)

9          On September 15, 2014, and again on October 16, 2014, Chanel's private
10   investigator traveled to Puka Creation's business located at 16840 South Main Street,
11   Gardena, California 90248 and purchased multiple costume jewelry items each
12   bearing the Chanel Mark.  (*See* Moreno TRO Decl. ¶¶ 9, 11.)

13         On October 30, 2014, Chanel filed the Complaint against Puka Creations.
14   Chanel brings two claims under the Lanham Act for (1) federal trademark
15   infringement and counterfeiting, 15 U.S.C. § 1114, and (2) false designation of origin,
16   15 U.S.C. § 1125(a).  On the same day as the Complaint was filed, Chanel filed an *Ex*
17   *Parte* Application for Temporary Restraining Order and Seizure Order.  (ECF No. 5.)
18   On November 3, 2014, the Court granted Chanel's requested relief and issued an order
19   to show cause as to why a preliminary injunction should not issue.  (ECF No. 2.)
20   Pursuant to the Court's Seizure Order, law enforcement officers from the Los Angeles
21   County Sheriff's Office, together with Chanel's counsel and investigators, seized
22   1,614 costume jewelry items bearing the Chanel Mark from Puka Creation's business.
23   (Hahn Decl. ¶ 13; Davis Decl. ¶ 5.)  Five days before the preliminary injunction
24   hearing, the parties stipulated to the exact terms Chanel sought in its request for
25   preliminary injunctive relief.  (ECF No. 19.)  Puka Creations agreed, *inter alia*, to
26   cease all manufacturing, advertising, promoting, distributing, or selling counterfeit
27   goods bearing the Chanel Mark pending the termination of the case.  (*Id.*)  The Court
28   granted the stipulation the same day.  (ECF No. 20.)

On March 6, 2015, the Clerk of the Court, at the request of Chanel, entered Default against Puka Creations pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 22.)   On March 13, 2015, Chanel filed the pending Motion for Default Judgment.  (ECF No. 24.)  On two separate occasions, the parties stipulated to delay the hearing date for Chanel's Motion.  (ECF Nos. 25, 28.)  Puka Creations, however, never filed an opposition brief and thus the Motion for Default Judgment is unopposed.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) authorizes the Clerk of the Court to enter a party's default in cases where the party has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).  Rule 55(b) grants the district court discretion to then grant default judgment against the defaulted party.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) ("Clearly, the decision to enter a default judgment is discretionary.").

Local Rule 55-1 first requires the party seeking default judgment to submit a declaration stating (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and (5) that notice has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2).  C.D. Cal. L.R. 55-1.

Generally, the defendant's liability is conclusively established upon default and the well-pleaded factual allegations in the complaint are accepted as true.  *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam). "The district court is not required to make detailed findings of fact" when entering default judgment.  *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

/ / /

In exercising its discretion, a court must consider several factors before entering default judgment:  (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (the "*Eitel* factors").

## IV.   DISCUSSION

### A.   Default Judgment

The Court finds that Chanel satisfied the five requirements of Local Rule 55-1. (*See* ECF Nos. 24-3, 24-5.)  For the reasons discussed below, the *Eitel* factors weigh in favor of Chanel and entry of default judgement against Puka Creations is appropriate.

#### 1.   Factor 1:  Possibility of Prejudice to Chanel

Without a default judgment, Chanel cannot obtain relief.  Puka Creations cannot avoid the consequences of its actions by not appearing in this matter.  This factor weighs in favor of default judgment.

#### 2.   Factor 2 and 3:  The Merits of Chanel's Substantive Claims and the Sufficiency of the Complaint

Factors two and three overlap in substance and are best suited for joint discussion.  These factors focus on the merits of the claims found in the well-pleaded complaint.  Chanel brings two claims under the Lanham Act:  (1) federal trademark infringement and counterfeiting, 15 U.S.C. § 1114, and (2) false designation of origin, 15 U.S.C. § 1125(a).

##### a.   Trademark Infringement

A claim of trademark infringement may be brought against any private person who, without the consent of the holder of the registered trademark, uses:

/ / /

> in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a).

"Neither actual confusion nor intent is necessary to a finding of likelihood of confusion." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988). In order to prevail on a claim for trademark infringement, a plaintiff must establish "(1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012) (quoting *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011)).

**b. False Designation of Origin**

A false designation of origin occurs when a producer misrepresents his own goods or services as someone else's or represents someone else's goods and services as his own. 15 U.S.C. § 1125(a). The statute provides as follows:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*Id.*

5

To establish a claim under § 1125(a), a plaintiff must establish that defendant is using a mark confusingly similar to a valid, protectable trademark. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). Thus, infringement claims brought under 15 U.S.C. §§ 1114 and 1125 are subject to the same test: "[T]he critical determination is whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (internal quotations and citations omitted).

### c.    Application

Chanel adequately alleged the necessary elements for each claim. The Complaint alleges that Puka Creations used the Chanel Mark in commerce, that Chanel has a protectable interest in the Chanel Mark, and the "net effect of [Puka Creations'] actions will be to confuse consumers who will believe [Puka Creations'] Counterfeit Goods are genuine goods originating from and approved by Chanel." (Compl. ¶¶ 7, 16, 17.)  Chanel investigators personally purchased these counterfeit goods from Puka Creations.  (Moreno TRO Decl. ¶¶ 9, 11.)  The facts as alleged are sufficient to establish a prima facie case for infringement under 15 U.S.C. §§ 1114 and 1125.  *Eitel* factors two and three weigh in favor of Chanel.

### 3.    Factor 4:  Amount of Money at Stake

The fourth factor looks at the sum of money at stake.  This factor "requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).  While the allegations in the complaint are taken to be true for purposes of default judgment, courts must make specific findings of fact in assessing the amount of damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  The Court has discretion to determine the amount of damages to be awarded. *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999). / / /

Chanel is only seeking statutory damages under 15 U.S.C. § 1117(c).  (Mot. 9.) As discussed *infra*, statutory damages are permissible and Congress has predetermined the proportional parameters for the Court to exercise its discretion. Therefore, the sum total of damages involved cannot be excessive nor a surprise to Puka Creations.  This factor weighs in favor of Chanel.

### 4.    Remaining *Eitel* Factors

The remaining *Eitel* factors all weigh in favor of Chanel.  The fifth factor considers the possibility of dispute concerning material facts.  In Chanel's Motion for Default Judgment, Chanel provided the Court with a sworn declaration from its investigator and photographs of the allegedly infringing products.  (*See* ECF No. 24.) Puka Creations already stipulated to terminate all infringing conduct.  (ECF No. 19.) It does not appear that Puka Creations disputes that it violated federal law.  Nothing in the record suggests that there is any dispute of material fact surrounding the infringing products.

The sixth factor considers whether Puka Creations' default was the result of excusable neglect.  The record indicates that Puka Creations stipulated to numerous filings in this case, to include delays in the scheduled hearings.  Puka Creations is aware of this suit and had more than enough time to mount a defense if it chose to do so.  There is no neglect—Puka Creations' decision to not appear was deliberate.

The seventh factor requires this Court to consider the strong policy favoring a decision on the merits.  While the Court would prefer to resolve this matter on the merits, Puka Creations' inaction leaves the Court with no other option.  The availability of statutory damages, which would most likely be the same damages recovered should this matter proceed to the merits, mitigates any reluctance to enter default judgment.  Thus, factors five, six, and seven all weigh in favor of entering default judgment against Puka Creations.

/ / /

/ / /

1    The Court finds that default judgment is appropriate based on the *Eitel* factors

2    discussed above.    Accordingly, the only remaining issue is Chanel's available

3    remedies.

4    **B.    Remedies**

5    Chanel requests a permanent injunction, statutory damages pursuant to 15

6    U.S.C. § 1117(c), and attorneys' fees and costs.   (Mot. 7–13.)   In determining

7    damages, a court may rely on declarations submitted by the plaintiff. Fed. R. Civ. P.

8    55(b)(2).

9    **1.    Permanent Injunction**

10    Chanel seeks to permanently enjoin Puka creations from engaging in any

11    further trademark infringement.  (Mot. 7.)  The Lanham Act gives the court "power to

12    grant injunctions, according to the principles of equity and upon such terms as the

13    court may deem reasonable, to prevent the violation of any right of the registrant of a

14    mark registered in the Patent and Trademark Office or to prevent a violation under

15    [the Lanham Act]."  15 U.S.C. § 1116(a).   A plaintiff is not entitled to equitable relief

16    simply because it affirmatively proves its claims.  *Pyrodyne Corp. v. Pyrotronics*

17    *Corp.*, 847 F.2d 1398, 1402 (9th Cir. 1988).   Chanel provides no evidence that Puka

18    Creations continues to sell counterfeit products, and based on the parties' preliminary

19    injunction stipulation (ECF No. 20), it appears that Puka Creations ceased all unlawful

20    conduct.   However, voluntary cessation does not render Chanel's requested relief

21    moot.  "A case might become moot if subsequent events made it absolutely clear that

22    the allegedly wrongful behavior court not reasonably be expected to recur."  *Friends*

23    *of Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

24    It appears unlikely that Puka Creations continues to violate the Lanham Act or

25    will violate the Lanham Act in the future.  However, Puka Creations' non-appearance

26    prevents the Court from finding that it is "absolutely clear" that Puka Creations'

27    unlawful activity will begin again.  The Court therefore **GRANTS** Chanel's request

28    / / /

1  for a permanent injunction enjoining Puka Creations from using the Chanel Mark on

2  counterfeit products.

3        **2.**     **Statutory Damages**

4        Section 1117(c) provides that in cases involving counterfeit marks, the plaintiff

5  may elect to recover statutory damages in lieu of actual damages and profits. 15

6  U.S.C. § 1117(c). Statutory damages under § 1117(c) are assigned as follows:

7             (1) not less than $1,000 or more than $200,000 per

8             counterfeit mark per type of good or services sold, offered

9             for sale, or distributed, as the court considers just; or

10            (2) if the court finds that the use of the counterfeit mark

11            was willful, not more than $2,000,000 per counterfeit

12            mark per type of goods or services sold, offered for sale,

13            or distributed, as the court considers just.

14 *Id.*

15       Statutory damages are awarded per "type of goods" and not per individual item

16 bearing the counterfeit mark. *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks*

17 *and Unfair Competition* § 30:95 (4th ed. 2009). The Court has broad discretion to

18 determine the amount of statutory damages. *Peer Int'l Corp. v. Pausa Records, Inc.*,

19 909 F.2d 1332, 1336 (9th Cir. 1990). The Ninth Circuit instructs that "when an

20 alleged infringer knowingly adopts a mark similar to another's, courts will presume an

21 intent to deceive the public." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394

22 (9th Cir. 1993).

23       Chanel provides evidence that it seized 1,614 costume jewelry items bearing the

24 Chanel Mark from Puka Creations. (Sisbarro Decl. ¶ 11.) Despite the volume of

25 goods, Chanel concedes that Puka Creations "distributed, advertised, offered for sale,

26 and/or sold at least *one (1) type of good*, namely costume jewelry items, bearing a

27 counterfeit of the Chanel Mark . . . ." (Mot. 11 [emphasis added].) The Lanham Act

28 / / /

clearly provides for damage awards per "type of good," *see* 15 U.S.C. § 1117(c), and only one type of good is at issue here.

There is, however, willful infringement.  Puka Creations distributed and sold goods deliberately designed to pass as authentic Chanel merchandise—this was no accidental infringement.  Puka Creations made counterfeit goods using the Chanel Mark without alteration, and failed to rebut the allegations of deliberate infringement. (*See* Compl. ¶ 22.)

Chanel requests statutory damages of $524,550 based on a proposed calculation that multiples the number of infringing products times the average retail value.  (Mot. 11–12.)  The Court has an interest in deterring future infringement, but does not want to unduly punish Puka Creations.  Puka Creations was selling the counterfeit goods for only five dollars apiece and stipulated to terminating all infringing conduct at the outset of this case.  (*See* Moreno TRO Decl. ¶¶ 9, 11.)  Half a million in damages is too much.  The Court finds that $200,000 in damages will properly compensate Chanel for the harm it suffered while also deterring future infringement by Puka Creations and others.   This amount represents the seriousness of the blatant infringement while also recognizing that Puka Creations' operation was relatively small in size.

### 3.    Attorneys' Fees and Costs

Section 1117(a) provides the Court with discretion to award reasonable attorneys' fees in "exceptional cases."   15 U.S.C. § 1117(a).   "A trademark infringement is viewed as 'exceptional' under § 1117(a) when the infringement is malicious, fraudulent, deliberate or willful."   *Rolex Watch*, 179 F.3d at 712.   A defendant's failure to defend an action is one factor that courts may consider in determining whether the defendant's conduct was willful for purposes of attorneys' fees.  *See Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*, 847 F. Supp. 2d 1197, 1204 (C.D. Cal. 2012).

/ / /

Due to the willful nature of the infringement, the Court finds that fees and costs are appropriate in this case.  Pursuant to Local Rule 55-3, Chanel is entitled to attorneys' fees in the amount of $7,600 and costs in the amount of $400.

## V.    CONCLUSION

For the reasons discussed above, the Court hereby **GRANTS** Chanel's Motion for Default Judgment.  (ECF No. 24.)  A permanent injunction and a judgment will issue separately.

**IT IS SO ORDERED.**


June 11, 2015


_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**